*426
 
 ATTORNEY DISCIPLINARY PROCEEDINGS
 

 PER CURIAM.
 

 | This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, Benjamin F. Hatfield, an attorney licensed to practice law in Louisiana, but currently ineligible to practice.
 
 [1]
 

 UNDERLYING FACTS
 

 Count I
 
 — The
 
 Baham Matter
 

 In 2003, Debrina Baham hired respondent to handle her divorce. She paid $670 toward respondent’s $750 fee. Before the divorce was complete, Ms. Baham hired another attorney. Instead of refunding any of her money, respondent informed Ms. Baham that he would provide legal assistance to her in the future free of charge.
 

 Approximately two years later, Ms. Ba-ham requested that respondent help her with a breach of contract matter related to the sale of her vehicle. Before the matter was completed, a conflict arose between respondent and Ms. Baham, and respondent “bowed out of the case.”
 

 Ms. Baham claimed that she made numerous, unsuccessful attempts to contact respondent to And out why no work was done on her second legal matter. She also | ^claimed that respondent failed to respond to her requests for a refund and the return of her file.
 

 In August 2006, the ODC sent respondent a letter requesting that he forward Ms. Baham’s files. Respondent failed to respond to the request. In October 2006, the ODC issued a subpoena to take respondent’s sworn statement. Despite being personally served with the subpoena, respondent failed to appear.
 

 Count II
 
 — The
 
 Evans Matter
 

 In February 2005, Troy Lynn Evans hired respondent to handle her divorce. Initially, respondent represented Ms. Evans on a pro bono basis through the New Orleans Legal Assistance Corporation.
 

 Following Hurricane Katrina, Ms. Evans contacted respondent regarding the status of her divorce, and respondent informed her that he was no longer associated with the New Orleans Legal Assistance Corporation. He also informed her that she would have to pay him $300 for him to continue the representation. Accordingly, Ms. Evans paid respondent $150 in March 2006. Nevertheless, respondent did not proceed with the divorce.
 

 Thereafter, Ms. Evans made numerous attempts to contact respondent with no success. She also sought a refund and the return of her file materials. Respondent did not respond to her requests. Eventually, Ms. Evans was forced to retain another lawyer to finalize her divorce, at an additional cost of $300.
 

 The ODC sent notice of Ms. Evans’ complaint to respondent in November 2006, but he failed to respond. In October 2006, the ODC issued a subpoena to take re
 
 *427
 
 spondent’s sworn statement. Despite being personally served with the subpoena, respondent failed to appear.
 

 _J¿Count III
 
 — The
 
 Jones/Stewart Matter
 

 In February 2006, Ada Jones hired respondent to obtain a divorce for her son, Nicholas Stewart. Ms. Jones paid an advance deposit of $700. Respondent failed to complete the divorce.
 

 Ms. Jones made numerous attempts to contact respondent with no success. She also sought a refund and the return of her file materials. Respondent did not respond to her requests.
 

 The ODC sent notice of Ms. Jones’ complaint to respondent in August 2006, but he failed to respond. In October 2006, the ODC issued a subpoena to take respondent’s sworn statement. Despite being personally served with the subpoena, respondent failed to appear.
 

 Count IV
 
 — The
 
 White Matter
 

 In August 2005, Karen White hired respondent to handle her divorce. Ms. White paid respondent a total of $608, but respondent failed to complete the divorce.
 

 Ms. White made numerous attempts to contact respondent with no success. She also sought a refund and the return of her file materials. Respondent did not respond to her requests.
 

 The ODC sent notice of Ms. White’s complaint to respondent in November 2006, but he failed to respond.
 

 Count V
 
 — The
 
 EmstfWagner Matter
 

 Ben Wagner retained respondent to handle the interdiction of his brother.
 
 [2]
 
 Respondent was paid $2,750 to handle the matter. In connection with the | interdiction, Mr. Wagner’s uncle, Donald Ernst, was to be appointed the curator, with Mr. Wagner serving as the undercu-rator.
 

 Respondent filed the interdiction in March 2005; however, the proceeding was not completed before Hurricane Katrina struck in August 2005. Respondent called Mr. Ernst in January 2006 to advise him that he would resume the interdiction, but thereafter Mr. Ernst heard nothing further from respondent. In July 2006, Mr. Ernst sent respondent a letter stating that he would seek other counsel if respondent was unable to complete the matter. Respondent did not respond to the letter, and Mr. Ernst hired attorney Mark Jolissaint to complete the interdiction.
 

 In the summer of 2006, respondent told Mr. Jolissaint that he would refund $1,000 to Mr. Ernst to assist in the completion of the interdiction. Thereafter, Mr. Jolis-saint sent respondent four reminder letters. Nevertheless, respondent did not refund the $1,000.
 

 Respondent also failed to adequately prepare the initial interdiction pleadings, and Mr. Jolissaint was forced to file an amended petition to correct the deficiencies. Mr. Ernst made numerous attempts to contact respondent with no success. He also sought a refund and the return of his file materials. Respondent did not respond to his requests.
 

 The ODC sent notice of Mr. Ernst’s complaint to respondent in April 2007, but he failed to respond.
 

 DISCIPLINARY PROCEEDINGS
 

 Formal Charges
 

 In July 2007, the ODC filed five counts of formal charges against respondent, alleging that his conduct as set forth above
 
 *428
 
 violated the following provisions of the |fiRules of Professional Conduct: Rules 1.3 (failure to act with reasonable diligence and promptness in representing a client), 1.4(a)(3) (failure to keep a client reasonably informed about the status of a matter), 1.4(a)(4) (failure to promptly comply with reasonable requests for information), 1.16(c) (failure to properly withdraw from a representation), 1.16(d) (failure to refund an unearned fee and failure to return a client’s file), 3.2 (failure to make reasonable efforts to expedite litigation), 8.1(b) (knowing failure to respond to a lawful demand for information from a disciplinary authority), and 8.1(c) (failure to cooperate with the ODC in its investigation). Respondent failed to answer or otherwise respond to the formal charges. Accordingly, the factual allegations contained therein were deemed admitted and proven by clear and convincing evidence pursuant to Supreme Court Rule XIX, § 11(E)(3). No formal hearing was held, but the parties were given an opportunity to file with the hearing committee written arguments and documentary evidence on the issue of sanctions. Respondent filed nothing for the hearing committee’s consideration.
 

 Hearing Committee Report
 

 After reviewing the ODC’s deemed admitted submission, the hearing committee determined that the factual allegations of the formal charges are deemed admitted and proven by clear and convincing evidence. Thus, the committee found that respondent violated the Rules of Professional Conduct as alleged in the formal charges.
 

 Relying on the ABA’s
 
 Standards for Imposing Lawyer Sanctions,
 
 the committee determined that the baseline sanction for respondent’s misconduct is disbarment. The committee found the following aggravating factors present: prior | ^disciplinary offenses,
 
 [3]
 
 dishonest or selfish motive, a pattern of misconduct, and multiple offenses. The committee determined that no mitigating factors are present.
 

 Noting that respondent has been difficult to locate and has not participated in this matter, the committee expressed its belief that respondent “has a complete lack of interest in these proceedings and ... in continuing the practice of law.” Accordingly, the committee recommended that respondent be disbarred.
 

 The ODC filed a limited objection to the hearing committee’s recommendation, stating that it had no objection to the sanction of disbarment but that respondent should also be ordered to make restitution to his clients.
 

 Disciplinary Board Recommendation
 

 After review, the disciplinary board found that the factual allegations have been deemed admitted and proven by clear and convincing evidence. Furthermore, because respondent has effectively admitted to the rule violations as charged, the board determined that the committee correctly concluded he violated the cited Rules of Professional Conduct. Additionally, the board found that respondent violated Rule 1.5(f)(5) (failure to refund an unearned fee) of the Rules of Professional Conduct by failing to refund unearned fees.
 

 According to the board, each client sought respondent’s representation to help them with domestic law cases, but their cases were greatly delayed by his failure to prosecute them. He further delayed matters by failing to refund unearned fees,
 
 *429
 
 failing to return client files, and failing to properly withdraw from cases. Thus, the board determined that respondent caused substantial harm to his clients.
 

 |7Based on these findings, the board determined that respondent knowingly and intentionally violated duties owed to his clients, the legal system, and the legal profession. The record reflects that he essentially abandoned his law practice and later failed to cooperate with the ODC. Relying on the ABA’s
 
 Standards for Imposing Lawyer Sanctions,
 
 the board determined that the baseline sanction is disbarment.
 

 In aggravation, the board found a dishonest or selfish motive, a pattern of misconduct, multiple offenses, bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with the rules or orders of the disciplinary agency, vulnerability of the victim, and substantial experience in the practice of law (admitted 1971). The board found no mitigating factors present.
 

 The board noted that this court has previously imposed disbarment for multiple instances of abandoning client matters, failing to refund unearned fees, and failing to cooperate with the ODC.
 
 [4]
 
 Furthermore, the board cited in
 
 In re: Watley,
 
 03-0233 (La.9/5/03), 854 So.2d 315, in which we explained, “[i]n cases involving neglect and abandonment of multiple clients, we have frequently held that disbarment is an appropriate sanction.”
 

 Accordingly, the board recommended that respondent be disbarred. The board further recommended that respondent make restitution to his clients for their unearned fees.
 

 Neither respondent nor the ODC filed an objection to the disciplinary board’s recommendation.
 

 | sDISCUSSION
 

 Bar disciplinary matters fall within the original jurisdiction of this court. La. Const, art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence.
 
 In re: Quaid,
 
 94-1316 (La.11/30/94), 646 So.2d 343;
 
 Louisiana State Bar Ass’n v. Boutall,
 
 597 So.2d 444 (La.1992).
 

 In cases in which the lawyer does not answer the formal charges, the factual allegations of those charges are deemed admitted. Supreme Court Rule XIX, § 11(E)(3). Thus, the ODC bears no additional burden to prove the factual allegations contained in the formal charges after those charges have been deemed admitted. However, the language of § 11(E)(3) does not encompass legal conclusions that flow from the factual allegations. If the legal conclusion the ODC seeks to prove (i.e., a violation of a specific rule) is not readily apparent from the deemed admitted facts, additional evidence may need to be submitted in order to prove the legal conclusions that flow from the admitted factual allegations.
 
 In re: Donnan,
 
 01-3058 (La.1/10/03), 838 So.2d 715.
 

 The deemed admitted facts, as supported by other evidence in the record, indicate that respondent neglected his clients’ legal matters, failed to communicate with his clients, failed to refund unearned fees, and failed to cooperate with the ODC in its investigations. These facts establish that he violated the Rules of Professional Conduct as alleged in the formal charges.
 

 Having found evidence of professional misconduct, we now turn to a deter
 
 *430
 
 mination of the appropriate sanction for respondent’s actions. In determining a sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and 19deter future misconduct.
 
 Louisiana State Bar Ass’n v. Reis,
 
 513 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved considered in light of any aggravating and mitigating circumstances.
 
 Louisiana State Bar Ass’n v. Whittington,
 
 459 So.2d 520 (La.1984).
 

 The record reveals that respondent caused substantial harm to his clients by neglecting their legal matters, causing resolution of their legal matters to be delayed, and resulting in increased costs to his clients. Additionally, respondent has failed to refund unearned legal fees totaling more than $3,000.
 

 As aggravating factors, we recognize a dishonest or selfish motive, a pattern of misconduct, multiple offenses, bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with the rules or orders of the disciplinary agency, vulnerability of the victim, and substantial experience in the practice of law. The only mitigating factor we are able to identify from the record is respondent’s lack of a prior disciplinary record.
 

 The baseline sanction for respondent’s misconduct is disbarment.
 
 See In re: Poirrier,
 
 01-1116, 01-1118 (La.6/29/01), 791 So.2d 94 (disbarment imposed upon an attorney who abandoned his law practice and failed to cooperate with the ODC in its investigations);
 
 see also
 
 Standard 8.41(a) of the ABA’s
 
 Standards for Imposing Lawyer Sanctions
 
 (indicating that disbarment is appropriate when “a lawyer abandons the practice and causes serious or potentially serious injury to a client”).
 

 Accordingly, we will adopt the disciplinary board’s recommendation and disbar respondent. We further order respondent to make full restitution to his clients.
 

 |inDECREE
 

 Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, it is ordered that the name of Benjamin F. Hatfield, Louisiana Bar Roll number 6648, be stricken from the roll of attorneys and that his license to practice law in the State of Louisiana be revoked. It is further ordered that respondent render an accounting to his clients who are the subjects of the formal charges and make restitution of any unearned fees. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.
 

 [1]
 

 . Respondent has been ineligible to practice law since September 11, 2006 for failure to pay his bar dues and the disciplinary assessment. He is also ineligible for failure to comply with the mandatory continuing legal education requirements and for failure to file a trust account disclosure form.
 

 [2]
 

 . Respondent was also retained by Mr. Wagner to handle his mother’s succession, for which he was paid a fee of $1,300.
 

 [3]
 

 . In fact, respondent does not have a prior disciplinary record. Thus, this finding by the committee appears to be a mistake.
 

 [4]
 

 . In support, the board cited
 
 In re: Decker,
 
 05-1550 (La.12/16/05), 916 So.2d 1023.